## WILLIAMS v. BROWN et al.
### No. 5546.

Court of Appeal of Louisiana. Second Circuit.

Oct. 29, 1937.

Rehearing Granted Dec. 3, 1937.

Writ of Certiorari and Review Denied May 30, 1938.

Robt. J. Newson, of Shreveport, for appellant.

Stephens & Stephens, of Coushatta, for appellees.

## TALIAFERRO, Judge.

The Ford V–8 truck of defendant Brown and a Model T Ford truck driven by defendant, William Haines, collided late of the afternoon of September 8, 1935, on highway No. 71, some thirty miles south of the city of Shreveport, and Odie May Williams, 20-year-old daughter of plaintiff, a passenger in the Haines truck, died a few days later from injuries suffered by her in the collision. The Brown truck was then being operated by defendant, Rufus Lovett. Brown was riding in it at the time.

Plaintiff brings this suit against Brown, Lovett and Haines to recover damages from them on account of his daughter's death, presumably on the theory that the collision was the result of their concurring negligence. However, the petition is barren of any charge of negligence against Haines. It is alleged that he is indebted in solido to plaintiff, but no reasons are assigned or facts set out which can serve as a basis for this allegation. Rather, in contradiction of the charge, it is alleged "that said accident or impact was caused by the reckless driving of the V-8 Ford truck occupied by the said B. L. Brown and Rufus Lovett". And amplifying this general charge, it is averred that the truck was recklessly driven because of the intoxicated condition of Brown and Lovett; that this condition caused them to lose control of the truck in that they misjudged distances and directions in "close places"; and that for these reasons and causes the Brown truck suddenly cut across the road and ran into the Haines' truck. It is additionally alleged that it was Brown's duty to instruct Lovett, his alleged chauffeur and employee, to reduce the speed of his vehicle and stay on his side of the road when meeting or passing other cars.

Haines did not answer. The case was defaulted as to him. Exceptions of misjoinder and of no cause and no right of action were filed by Brown and Lovett, who will hereinafter be denominated defendants. All exceptions in limine were overruled; and thereafter the exception of no cause of action was sustained to an extent and plaintiff was allowed to file an amendment to cure a defect in the petition. The exception of non-joinder has apparently been abandoned. It is not urged here. The exception of no cause and no right of action, in the respects now urged, is directed against the vagueness and lack of definiteness of plaintiff's allegations regarding the facts of negligence and recklessness on defendants' part as a or the cause of the collision.

Defendants deny any liability to plaintiff and deny that the collision of the cars was to any extent the result of their negligence or carelessness. They specifically deny that either was intoxicated when the accident occurred. They admit that Odie May Williams was a passenger on the Haines truck and that she died on September 11, 1935, from injuries received in the accident. They aver in defense that they saw the Haines truck approaching them from the south at a rapid rate of speed, on their side of the road some two or three feet; that Lovett sounded the horn but apparently Haines did not hear it or observe their presence, or, if so, was indifferent thereto; that in order to prevent a head-on collision, Lovett pulled his truck off of the highway onto the dirt shoulder, both right wheels getting thereon, and,—"that this shoulder being slippery and muddy, when the hind wheels struck the soft dirt, it being a light truck, it threw the front wheels of same back on the highway and the two trucks were forced together on ' these defendants' side of the black line. This accident was caused by reason of the said Haines being on the

wrong side of the road, forcing your defendants off the road onto the muddy and slippery shoulder, and the prime and proximate cause of this accident was the said Haines driving his truck on the wrong side of the road, creating and forcing an emergency and condition which resulted in this accident."

In the alternative, defendants plead that should it be found and held that the accident did not occur in the manner above set forth, then they show that said Haines, having forced their truck from the road onto the wet and slippery shoulder, a ditch being immediately on their right, an emergency was thereby created through no fault of theirs, and that in order to avert running into the ditch, Lovett pulled the truck to his left in an effort to regain the road, resulting in running into the Haines truck, which was then and there on their side of the black center line; and that the accident happened in this manner.

Further in the alternative, defendants plead that if it should be held that the collision occurred through or by the fault of either or both of them, then they show that Haines was a grossly incompetent and negligent driver to the knowledge of plaintiff and his deceased daughter, and that riding with such a driver, under the circumstances herein related, constitutes such contributory negligence on their part as to bar recovery herein.

Further in the alternative, defendants plead that the truck whereon deceased was riding when injured had an open bed which extended beyond the wheels on either side and that the riding thereon by Odie May Williams, with her legs hanging down from the bed's side, constituted contributory negligence on her part and for that reason plaintiff should not recover.

With these alternative averments as a basis, contributory negligence is specially pleaded.

From a judgment for defendants, plaintiff has appealed.

■ On objection of defendants' counsel, testimony offered by plaintiff to prove that their truck was negligently and carelessly operated immediately prior to and at the time of the accident, was excluded. This ruling is based upon the vagueness and indefiniteness of plaintiff's allegations. However, subsequent to the ruling, defendants themselves, without reservation, adduced testimony, including their own, which fully described the movements of both vehicles as they approached each other for a distance of several hundred yards and to the point of impact. So far as concerns defendants' truck, we find that their version of its said movements not at variance with the established facts of the case. We are of the opinion, however, that by the procedure above mentioned, they waived the benefits of the exceptions and that we are warranted in considering and passing on the case as though such exception had not been filed and urged or objection to the admissibility of the excluded testimony made. Fontenot v. Manuel, 46 La.Ann. 1373, 16 So. 182; Ducote v. Ducote, 183 La. 886, 165 So. 133; Yazoo & M. V. R. Co. v. Wagner, 5 Cir., 87 F. 855.

■ We are convinced that the charge of intoxication made against defendants is not sustained by the testimony. Mr. Sledge only testified that they were so affected after the accident. His testimony on the subject is really in the nature of an opinion based upon defendants' physical movements immediately following the collision and the odor from their breath. They were suffering from acute shock and each had had a bottle or two of beer.

■ The accident occurred at a low place on the concrete highway from which the road gradually ascends southerly 505 yards to the crest of a hill, and ascends northerly 243 yards to a hill top. The concrete slab is 18 feet wide and the shoulders 4 feet wide. The Haines truck was traveling northerly at a moderate rate of speed. The Brown truck was going southerly at a faster speed, we think. Plaintiff's daughter was sitting on the flat body of the Haines truck, facing west, with her legs from the knees down hanging off. It is not questioned that the Brown truck suddenly changed its course, cut to its left (east) and that its left fender struck the Haines truck about the center of the bed and in so doing also struck one of the girl's legs and severed it some three inches below the knee. Beyond these admitted facts, the testimony is exceedingly contradictory. But, after a diligent study of the record, we find these additional facts established: that when the Brown truck came from over the northern hill (243 yards from the locus of the accident), its occupants observed the Haines car with

its cargo of negroes (eight or nine in all), several hundred yards away, coming toward them at a moderate speed and to some extent over the black line; that neither car reduced its speed as they approached each other; and that defendants sounded no alarm to warn Haines of his unwarranted encroachment upon their side of the highway, but continued to travel toward him until they felt that for their own safety, at least, they should put the right wheels of their truck on the wet and slippery shoulder of the highway, and this was done; that their truck began to slip and skid and, fearing that it would slide into the parallel ditch (as is set up in their answer), the truck, still moving rapidly, was suddenly pulled to its left side after traveling on the shoulder some 30 feet, and the collision was the immediate result. This latter conclusion is positively supported by Lovett's testimony wherein he says: "as we were going to pass him, I hit this soft mud and the truck skidded." The left rear wheel of the Haines truck was knocked off. The Brown truck rested in the ditch on the east side of the road quite a distance away.

Brown testified that he heard the negroes laughing and holleing in the truck, and that he cautioned Lovett to be careful as "negroes always take the road". This admonition was given when the Brown truck was 100 yards or more distant from the Haines truck. Brown testified also that he knew a collision was inevitable when the trucks were approximately 100 yards apart.

Brown and Lovett were familiar with the physical conditions surrounding the locus of the accident and, having had extensive experience in operating motor vehicles, knew or should have known the immediate effect the muddy surface would have upon the truck's movements if it entered thereon while traveling rapidly. In view of the admitted and established facts of the case, what was the legal duty of defendants when they became cognizant of conditions ahead of them and realized that an accident was inevitable, unless one or both slowed down, shifted position or came to a stop? Was it not their duty, especially as regards innocent third persons, to have reduced the speed of their truck or to have brought it to a stop until the danger of a collision had passed? We feel certain that this question should be affirmatively answered.

Anent these questions, Blashfield's Cyclopedia of Automobile Law & Practice, Permanent Edition, Vol. 2, § 919, says:

"A motorist has a right to assume that the driver of a vehicle coming from the opposite direction will obey the law, and to act upon such assumption in determining his own manner of using the road. A driver therefore proceeding on the right side of the traveled highway, may assume that the driver of a vehicle approaching on the same side, or on his left-hand side, will do all that a reasonably prudent person, under all the circumstances, would do to avoid a collision, which ordinarily would be to yield half the way, or to turn out in time to avoid a collision, and that such driver will not force him, in violation of the statute or ordinance, or the law of the road, to turn from the part of the road on which he is lawfully driving.

"Likewise, a motorist on the right side of the road and traveling in a lawful manner can assume that one approaching in the opposite direction will control his car in obedience to the law of the road and will not suddenly turn across his path.

"These assumptions may not be indulged in, however, after he sees or ought to see, from the situation of the cars or highway or the conduct of the approaching driver, that they are unwarranted. In other words, the duty of an automobile driver, who is on the right side of the street, to stop or take other precautions to avoid a collision with an approaching vehicle, only arises when by due care he discovers that another on the wrong side of the street cannot or will not himself turn to the right to clear his way."

It is true, as is said by Blashfield, that a motorist has the right to assume that one approaching him will hold his side of the road or, if not entirely thereon, will regain it in time to avoid a collision, but this rule, as is also said by him, is not without its exceptions. If the motorist, from all appearances, has good reason to believe that the operator of the approaching car does not realize the perilous situation he has created and is continuing or, from the situation in a general way, has no reasonable ground upon which to assume that such operator will timely resume travel on his side of the road, it devolves upon him to exercise all due diligence and precaution and to take such action as will avoid an emergency and avert the impending accident.

In the present case, Brown and Lovett observed that the Haines truck was loaded with negro passengers, nearly all of whom were so situated that they could not see objects ahead of them. Brown told Lovett that negroes take all of the road and for this reason he should be careful, but instead of doing so, he drove the truck rapidly forward for 100 yards or more and until an emergency was created which could easily have been prevented by the exercise of ordinary care and prudence. The failure to have so acted, in view of the established facts of the case, while there remained time to do so, exposes defendants to liability for damages. They certainly had the last clear chance to avoid the accident. Their negligence and lack of due care in these respects was certainly a or the proximate cause of the collision. Baker v. Zimmerman, 179 Iowa 272, 161 N.W. 479; Cook v. Standard Oil Co., 15 Ala.App. 448, 73 So. 763; Hatch v. Daniels, 96 Vt. 89, 117 A. 105.

The case of Rottman v. Beverly, 183 La. 947, 165 So. 153, strongly supports the reasons and conclusions we have reached herein.

■ We find no merit in the pleas of contributory negligence. It is not shown that Haines was not a competent operator of motor vehicles. His experience as such extended over a period of several years. The fact that he may have carelessly encroached upon defendants' side of the road to a small extent does not argue strongly against his ability to successfully drive a car or truck. Nor do we think that because plaintiff's daughter allowed her legs to hang from the bed of the truck, she thereby contributed to the accident to the extent necessary to bar recovery by her, had she survived, or by her father as beneficiary, under Article 2315 of the Civil Code. Such a plea, based upon the same facts, was rejected in Gornstein v. Priver, 64 Cal.App. 249, 221 P. 396; and while we find no Louisiana case involving the same facts, we do find many in which the plea was urged and disallowed, where the decedent or injured one was killed or maimed when riding on a car's running board. The following cases present such an issue: Stout v. Lewis et al., 11 La.App. 503, 123 So. 346; Gauvereau v. Checker Cab Co., 14 La.App. 448, 131 So. 590; Quatray v. Wicker et al., 16 La.App. 515, 134 So. 313.

Such a plea was denied in the case of McDonald v. Stellwagon, 140 So. 133, decided by this court. We said therein (page 138):

"If the boys were negligent in riding on the running board, such negligence in fact amounted only to the assumption of risk necessarily incident to their position, that is, the risk of travel under ordinary circumstances, and they did not assume the risk of extraordinary and unexpected peril, such as was created by the reckless driving of Stellwagon. If Stellwagon had driven in a safe and sane manner, as was to be expected by one in his position, the two boys no doubt would be well and alive today. They did not assume the risk of his criminal negligence, and their negligence, if any, is not a bar to their recovery."

In Locke v. Shreveport Laundries, 18 La. App. 169, 137 So. 645, we held that because the deceased was walking on his right side of the road at night, in violation of the Highway Regulatory Act, Act No. 296 of 1928, § 20, he was not contributorily negligent to such degree as to bar recovery by his widow.

■ Plaintiff does not sue for any amount for the pain and suffering of the deceased during the three days she lived and was in the hospital after being injured. He does sue for the loss of her services as housekeeper and farm hand, and for the grief and anguish experienced by him because of her tragic and untimely death. It does not appear that he was dependent upon her services for a living to any great extent. He has several other single children to assist him on the farm, and as the deceased was twenty years old, it is unlikely that she would have remained single and in plaintiff's home for many years. When injured she was returning from her mother's funeral.

All things considered, it is our opinion that an award of Twenty-five Hundred ($2500.00) Dollars will be adequate.

■ There is no contention that Brown is not responsible for the negligent acts of Lovett. The record convinces us that in operating the truck at the time of the accident, Lovett's relation to Brown was that of chauffeur or agent.

For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed; and there is now judgment in favor of plaintiff, George Williams, and against defendants, B. L. Brown, Rufus Lovett and William Haines, in solido for

Twenty-five Hundred ($2500.00) Dollars, with 5% per annum interest from judicial demand herein until paid; and for all costs.

HAMITER, J., dissents.

On Rehearing.

DREW, Judge.

This case is before us on rehearing.

After listening to its reargument and after a careful study of the record again, we are convinced that our former judgment rendered herein is correct.

It is therefore reinstated and made the judgment of this court.

HAMITER, J., dissents.